O

JS - 6

cc: order of remand; docket, remand letter to
Los Angeles Superior Court, Case No. BC 420161

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LUSIK KHDRLARYAN, | ) | Case No. CV 09-08141 DDP (FMOx) |
| | ) | |
| Plaintiff, | ) | **Order Granting Plaintiff's Motion to Remand (Dkt. No. 16)** |
| | ) | |
| v. | ) | |
| | ) | |
| OLYMPIA MEDICAL CENTER, MEDICAL STAFF OF OLYMPIA MEDICAL CENTER, OLYMPIA HEALTH CARE, LLC, | ) | [Motion filed on May 3, 2010] |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Presently before the Court is Plaintiff Lusik Khdrlaryan ("Plaintiff")'s Motion to Remand. For the reasons set forth below, the Court GRANTS the Motion, and REMANDS this case to Los Angeles County Superior Court.

**I.   Background**

Plaintiff filed this action against Olympia Medical Center and Olympia Health Care, LLC (together "Defendants") in Los Angeles County Superior Court on or about August 20, 2009. Plaintiff's complaint alleges state-law causes of action for: (1) "wrongful termination of employment in violation of public policy"; and (2)

"defamation and compelled self-defamation." Defendants timely filed a Notice of Removal on November 5, 2009 invoking the Court's federal question jurisdiction.[1] See 28 U.S.C. § 1331. Defendants contend that, because Plaintiff's state-law claims are completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, this case arises under federal law, and accordingly, removal to federal court was proper.[2]

Plaintiff filed a Motion to Remand on May 3, 2010, (Dkt. No. 16), contending that the Court lacks subject matter jurisdiction over the claims alleged in the complaint. Defendants filed their opposition papers on May 17, 2010, (Dkt. No. 21), and Plaintiff did not file a reply.

**II.  Legal Standard**

Remand may be ordered for lack of subject matter jurisdiction or for "any defect in removal procedure." 28 U.S.C. § 1447(c). Generally, there is a strong presumption in favor of remand. See Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 403-04 (9th Cir. 1996). The removal statutes are construed restrictively, and doubts about removability are resolved in favor of remand.

---

[1] Defendants filed their Notice of Removal with thirty days of receiving the complaint and summons, and within one year of the commencement of the state court action. (Notice of Removal, Ex. A.) Accordingly, the Notice of Removal is timely. See 28 U.S.C. § 1446(b).

[2] Section 301 of the LMRA provides, in relevant part: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185.

2

Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

## III. Discussion

"[I]f a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law" for the purposes of determining federal question jurisdiction. Franchise Tax Bd. of State of Cal. v. Constr. Laborers Trust for Southern Cal., 463 U.S. 1, 24 (1983). "[T]he preemptive force of [LMRA] § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." Id. at 23 (internal quotation marks omitted). Section 301 "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404 & n.3 (1988).

Beyond breach of contract suits premised on violations of an agreement between an employer and a labor union, § 301 also preempts all "state-law claims that are 'substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract[.]'" Adkins v. Mireles, 526 F.3d 531, 539 (9th Cir. 2008) (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985)); see also Miller v. AT&T Network Sys., 850 F.2d 543, 549 (9th Cir. 1988) (holding that, because claims for intentional infliction of emotional distress require interpretation of employer's "reasonableness," which in turn requires interpretation

3

of the CBA, claims were preempted). Put differently, "LMRA § 301 will operate to preempt a state-law claim whose resolution depends upon the meaning of a [CBA]," even if the state cause of action does not allege a violation of the CBA as such. Id. On the other hand, "[i]f a state law cannot be waived or modified by private contract, and if the rights it creates can be enforced without resort to the particular terms, express or implied, of the labor contract, the LMRA does not preempt a claim for violation of the law." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 990 (9th Cir. 2007).

Plaintiff acknowledges that she was a member of a union (the Service Employees International Union - United Healthcare Workers West, referred to hereinafter as "the Union"), (Defs.' Opp'n, Ex. C), and that a collective bargaining agreement ("CBA") between the Union and her former employer, Olympia Health Care, LLC, governed the parties' employment relationship, (Defs.' Opp'n, Ex. D). She contends, however, that this case cannot be said to "arise under" federal law because the state-law claims alleged in her complaint do not require interpretation of the applicable CBA.

Upon careful review of both Plaintiff's complaint and the terms of the CBA, the Court is persuaded that LMRA § 301 does not completely preempt either of Plaintiff's state-law claims, and thus, that the Court lacks subject matter jurisdiction over this action.

**A.  Wrongful Termination**

Plaintiff's complaint states the following regarding the circumstances of her termination:

> During the last years of plaintiff's employment, defendants chronically understaffed respiratory therapists and chronically provided insufficient equipment. Both of these practices resulted in compromised health care. Shortly prior to her discharge . . . , plaintiff Khdrlaryan complained that she had to leave a medical procedure because she became ill, presenting an immediate danger to those around her, including her co-workers and the patient, in a situation that arose because of defendants' understaffing and lack of equipment. As a result of her complaint, plaintiff Khdrlaryan's employment was terminated on April 9, 2009.

(Compl. ¶ 10.)  Plaintiff further contends that she "complained to defendants that their understaffing and insufficient equipment would constitute a danger to their patients," and that "[i]nstead of taking appropriate action, defendants terminated plaintiff's employment." (Id. § 12.)  Because the California Labor Code "prohibit[s] employers from retaliating against employees who make good-faith complaints about work place safety and health," (Id.), Plaintiff contends, Defendants terminated her in direct contravention of the state's public policy.  Plaintiff relies on § 6310 of the California Labor Code (a component of the California Occupational Safety and Health Act of 1973), which provides that

> No person shall discharge or in any manner discriminate against any employee because the employee has . . . [m]ade any oral or written complaint to [California's Occupational Safety and Health Division], other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative.

Cal. Labor Code § 6310(a).

    The CBA that the Union entered into with Defendants contains detailed procedural and substantive requirements concerning staffing levels.  It provides, in relevant part,

> Should an employee believe [that] staffing levels are insufficient to permit the delivery of adequate patient care, he/she shall undertake work assignments but may do so under oral or written protest. In an emergency situation where there is a potential danger to [the] patient, the employee

5

```
        shall immediately notify his/her supervisor, manager/designee
        who will physically visit the unit to assess the situation.
        If and when DHS expands or makes changes in nurse/patient
        ratios, the Employer agrees to negotiate the implementation
        of said ratios with the Union.
```

(Shelby Decl, Ex. D at 34-35.)  The CBA further states that the hospital where Plaintiff formerly worked (Olympia Medical Center)

```
        will establish a [Patient Care] [C]ommittee for the
        bargaining unit comprised of six (6) bargaining unit
        employees selected by the Union and comprised of six (6)
        management employees selected by the Facility . . . .  At the
        request of either party, a difference of opinion
        between the representatives of the Patient Care Committee
        shall be referred to the Joint Practice Committee . . . .
        This committee will be the exclusive means for resolving any
        such differences of opinion and shall be composed of the
        President of the applicable local union or designee and one
        (1) Union member of the applicable Patient Care Committee,
        and two (2) members of the Hospital's management team.
```

(Shelby Decl., Ex. D at 35-36.)  The CBA then sets forth a detailed conflict resolution procedure for mediating staffing disputes, including requiring a meeting within ten days of the referral to the Joint Practice Committee and a recommendation to be issued by the Committee within thirty days.  (Id.)  In the event that the Joint Practice Committee cannot resolve the dispute, the CBA provides, the dispute will be submitted to final and binding arbitration before a third party neutral. (Id.)

   Defendants contend that the "wrongfulness" of Plaintiff's termination depends, at least in part, on whether the parties fulfilled their contractual obligations under the CBA.

   The Court disagrees.

   Under California law, an employer who fires an employee in retaliation for protesting unsafe working conditions violates fundamental public policy (embodied in Cal. Labor Code § 6310(a)), and the discharged employee may bring a tort action for wrongful

6

discharge. See Boston v. Penny Lance Ctrs., Inc., 88 Cal. Rptr. 3d 707, 716 (Ct. App. 2009). "A claim that a discharge violates public policy is preempted [by the LMRA] if it is not based on any genuine state public policy or if it is bound up with interpretation of the [CBA] and furthers no state policy independent of the employment relationship." Jackson v. Southern Cal. Gas Co., 881 F.2d 638, 643-44 (9th Cir. 1989) (internal quotation marks and citation omitted). "[A] claim is not preempted if it poses no significant threat to the collective bargaining process and furthers a state interest in protecting the public transcending the employment relationship." Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 1001 (9th Cir. 1987).

California law prohibits an employer from discharging, or otherwise discriminating against, an employee who complains to his or her employer about "employee safety or health." Cal. Labor Code § 6310(a). Section 6310(a), therefore, creates a statutory right that is "independent of any right established by [the CBA]." Allis-Chalmers, 471 U.S. at 213; see Soremekun, 509 F.3d at 991 ("If a state law cannot be waived or modified by private contract, and if the rights it creates can be enforced without resort to the particular terms, express or implied, of the labor contract, the LMRA does not preempt a claim for violation of the law.") Whether Plaintiff followed the applicable CBA procedures for raising complaints about staffing is immaterial – if Defendants fired her because she complained about a threat to workplace safety, then she is entitled to prevail on her wrongful termination in violation of public policy claim. Boston, 88 Cal. Rptr. 3d at 716.

7

Hollinquest v. St. Francis Medical Center, 872 F. Supp. 723, 726 (C.D. Cal. 1994), on which Defendants' rely, is distinguishable. In Hollinquest, the district court concluded that LMRA § 301 preempted a state-law wrongful termination in violation of public policy claim because the court would be forced to "analyze and interpret the [just cause termination] provisions of the CBA to determine whether Plaintiff was wrongfully terminated." Id. at 726. In sharp contrast to this case, however, the plaintiff in Hollinquest – a registered nurse – was unable to identify any state public policy that her termination offended. Id. In the absence of a public policy violation, the court treated the plaintiff's claim as, in substance if not in form, an ordinary wrongful termination tort. The court then concluded that determining the "wrongfulness" element of the plaintiff's claim would require interpretation of a CBA provision stating that the employer had "the right to discharge or assess disciplinary action against any registered nurse for 'just cause' only." Id. at 726 & n.5.

The operative issue here, by contrast, is whether Defendants terminated Plaintiff because she complained about workplace safety, in violation of California's clearly articulated labor policy. Plaintiff's claim can be adjudicated without reference to the CBA, and thus, LMRA § 301 does not completely preempt Plaintiff's wrongful termination claim.

**B.  Defamation**

Defendants also contend (although with less force) that § 301 of the LMRA completely preempts Plaintiff's defamation claim.

Plaintiff's complaint states the following regarding her defamation claim:

> Defendants falsely informed individuals other than plaintiff that plaintiff was an incompetent and disloyal employee who had walked off the job. These statements were both unprivileged and false. Such statements were made to persons . . . who had no legitimate business reason to be told such false accusations.

(Compl. § 16.) As a result of Defendants' false statements, Plaintiff alleges, she has "been injured in her profession and . . . has sustained and continues to sustain losses of earnings and other employment benefits." (Compl. § 17.)

The Ninth Circuit has held that § 301 of the LMRA can completely preempt state-law defamation claims in some circumstances. See, e.g., Shane v. Greyhound Lines, Inc., 868 F.2d 1057, 1063 (9th Cir. 1989). The inquiry, however, is context specific, and turns on whether the underlying defamation claim is "inextricably intertwined" with the CBA. See id.

Plaintiff's defamation claim does not appear, on its face, to be inextricably intertwined with the CBA, and Defendants' Opposition does not explain why or in what manner adjudication of Plaintiff's defamation claim would require the Court to interpret the CBA. In the absence of a plausible preemption theory (i.e., an explanation of how some provision of the CBA interacts with Plaintiff's defamation claim), the Court cannot conclude that LMRA § 301 completely preempts Plaintiff's claim.

**IV. Conclusion**

For the reasons explained above, the Court concludes that this case does not arise under federal law, and thus, that subject matter jurisdiction is lacking. Accordingly, the Court GRANTS

1  Plaintiff's Motion to Remand, and REMANDS this case to Los Angeles
2  County Superior Court.

5  IT IS SO ORDERED.

8  Dated: June 15, 2010
9                                          DEAN D. PREGERSON
10                                         United States District Judge

10